**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KEITH MERCHANT #57001177,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:20-CV-03727-B (BH)** |
| | ) | |
| **GARLAND POLICE DEPARTMENT,** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge[1]** |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Based on the relevant filings and applicable law, the plaintiff's complaint should be

**DISMISSED**.

**I. BACKGROUND**

Plaintiff Keith Merchant (Plaintiff), federal prisoner convicted of attempted enticement of

a minor in 2021, sues an agent of the Federal Bureau of Investigation (Agent), the City of Garland,

Texas (City), and the Garland Police Department (GPD), for allegedly depriving him of due process

and a fair trial by tampering with evidence. Plaintiff has not alleged, and the docket does not reflect,

that his federal conviction following a guilty plea has been invalidated, overturned, or in any way

called into question. *See United States v. Keith Lee Merchant*, 3:18-cr-214-B (N.D. Tex. Mar. 26,

2021); *see also* https://www.bop.gov/inmateloc/ (search for Plaintiff).

Plaintiff alleges that Agent took his cell phone as evidence shortly after he was arrested. (*See*

doc. 11 at 7.) Data was extracted and copied from it, but not in a manner that ensured there was no

tampering with any evidence, as required. (*See id.*) When Plaintiff met with his attorney to go over

discovery, he discovered that 10-20 messages on his phone which could "be deemed exculpatory

---

[1] By *Special Order* No. 3-251, this *pro se* prisoner case has been automatically referred for full case management.

evidence" were missing from the "chat conversation" that he had with Agent, who was working in an undercover capacity during the conversation. (*See id.*; doc. 3 at 6.) During his interrogation by Agent and an unidentified person working at GPD, Plaintiff made a "statement" about two of the messages missing from his phone. (*See* doc. 11 at 8.) When he later watched the interrogation video with his attorney, however, the statements he made about the missing messages were also missing. (*See id.*) He claims that Defendants tampered with evidence by concealing from his phone messages from his conversation with Agent and then altering the interrogation video that referenced these missing messages (*See id.* at 8-9; doc. 15 at 2.) He contends GPD was "in charge of handling" his phone when it was analyzed, and its "lax" policies for handling evidence may have resulted in the evidence tampering. (*See* doc. 3 at 6.)

Plaintiff seeks a court-appointed attorney to issue a subpoena for pertinent records from the application he was using to talk with Agent to show that Defendants concealed exculpatory evidence. (*See* doc. 11 at 5.) He also seeks an order to preserve his phone and the interrogation video so that he can determine whether Defendants tampered with any evidence as well as "monetary damages in the amount of $2,245,320." (*See id.* at 5.)

## II. PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma paueris*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curium). Because he is proceeding *in forma pauperis*, his complaint his also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915(A)(b) provide for *sua sponte* dismissal of the complaint, or of any part of it, if the Court finds it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who

2

is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.  42 U.S.C. § 1983

Plaintiff claims against the state defendants arise under 42 U.S.C. § 1983. That statute "provides for a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a § 1983 claim, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### A.    *Heck v. Humphrey*

Plaintiff's claims appear to be barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). It provides that a plaintiff who seeks to recover damages for an allegedly unconstitutional conviction, imprisonment or other unlawful action that renders a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Id.* at 486-87. *Heck* applies to claims seeking declaratory and injunctive relief as well as those seeking damages. *Shabazz v. Franklin*, 380 F.Supp.2d 793, 805 (N.D. Tex. 2005) (citing *Edwards*

3

*v. Balisok*, 520 U.S. 641, 648 (1997); *Clarke v. Stalder*, 154 F.3d 186, 190-91 (5th Cir. 1998)).

Here, success on Plaintiff's claims of evidence tampering would imply that his federal conviction is invalid. As noted, he does not allege that it has been overturned, invalidated, or in any way called into question, so his claims are barred by *Heck*. *See*, *e.g.*, *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (finding that *Heck* barred claim that defendant altered and destroyed evidence relevant to the charges against the plaintiff because "[c]onvictions tainted by the suppression, destruction, or alteration of material evidence violate a defendant's Fourteenth Amendment right to due process..." and if the court were to "find that Lyons altered and destroyed evidence relevant to the charges against Hamilton, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges") (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Heck*, 512 U.S. at 486-87).

Where, as here, the issues are appropriate for early and final determination, however, or where there are alternate reasons for dismissal that further judicial economy, consideration of whether *Heck* bars a plaintiff's claims is not required or may be done in the alternative. *See Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458, 462 n.6 (5th Cir. 1998) (when an action raises an issue of immunity, the court to the extent it is feasible to do so should determine that issue as early in the proceedings as possible); *Little v. Board of Pardons and Parole Division*, 68 F.3d 122, 123 (5th Cir. 1995) ("Even if a complaint is subject to dismissal under *Heck*, it remains appropriate for district courts to resolve the question of immunity before reaching the *Heck* analysis.")(citing *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994)); *Smithback v. Cockrell*, No. 3:01-CV-1658-M, 2002 WL 1268031, at *2 (N.D. Tex. June 3, 2002) (accepting recommendation that "[w]hen a plaintiff seeks relief unavailable under 42 U.S.C. § 1983 or sues individuals or entities who are not proper parties under § 1983, it also seems appropriate to have an early determination of those issues").

4

> However, before applying *Heck*, which results in only a *conditional* bar that allows refiling of the lawsuit in the event that the conviction is subsequently invalidated, it is appropriate for a court, in the interest of judicial economy, to determine whether alternative bases for dismissal exist which would result in an *absolute* bar for refiling. If such an alternative basis exists, the claims should instead be dismissed with prejudice on those grounds in order to prevent the subsequent filing of clearly meritless lawsuits.

*Cook v. Neuner*, Civil Action No. 12-1428, 2012 WL 2856495, at *3 (E.D. La. June 20, 2012), *rec.*

*accepted*, 2012 WL 2856492 (E.D. La. July 11, 2012) (citations omitted) (emphasis in original).

As discussed below, Plaintiff would still fail to state a claim even if his conviction was

overturned or called into question, so early determination is appropriate.

**B.    GPD**

A plaintiff may not bring a civil rights claim against a servient political agency or department

unless such agency or department enjoys a separate and distinct legal existence. *See Darby v.*

*Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). Unless the true political entity has

taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in

any litigation except in concert with the government itself. *Id.* at 313.  "Plaintiff fail[s] to show that

[City] granted [GPD] the capacity to sue or be sued." *Clayton v. Garland Police Dept.*, No. 3:09-

CV-2048-D ECF, 2010 WL 2640258, at *1 (N.D. Tex. May 11, 2010), *rec accepted*, 2010 WL

2605258 (N.D. Tex. June 28, 2010) (dismissing suit against GPD because it is not a jural entity). His

claims against GPD should be dismissed.

**C.    City**

 Municipalities, including cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur.,*

*LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983

if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional

rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*,

No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 1662, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278

(5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Here, Plaintiff makes conclusory allegations that the City has a custom of tampering with evidence in federal criminal cases. (*See* doc. 15 at 1.)[2] He points to no other incidents of evidence-tampering to support his claim, however. A single incident is insufficient to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) (explaining that, to show custom that fairly represents municipal policy, the plaintiff must show "sufficiently numerous prior incidents" as opposed to "isolated instances") (citations omitted); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Blakely v. Andrade*, 360 F.3d 453, 488 (N.D. Tex. Jan. 23, 2019) ("Because Husband essentially relies on a single incident plus generalities and conclusions, he has not sufficiently alleged an official policy or custom for municipal liability, and his claims against the County for violations of the Fourth and Fourteenth Amendments should be dismissed *sua sponte*.")). Because Plaintiff has not adequately plead the existence of a policy or custom, his claims against the City should be dismissed.[3]

---

[2]Plaintiff's answers to three magistrate judge's questionnaires constitute amendments to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[3]Although Plaintiff's complaint also mentioned "lax" evidence-handling policies, he did not mention these policies in his questionnaire answers. Any claim that official evidence-gathering policies were the moving force behind the constitutional violation would also fail because the allegations are conclusory, and he does not identify the policy. *See Davenport v. City of Garland, Tex.*, No. 3:09-CV-798-B, 2010 WL 1779620, at *2-3 (N.D. Tex. Apr. 9, 2010), *rec. accepted*, 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010) (explaining that "conclusions, unsupported by facts, are not entitled to the presumption of truth"); *see also Clark v. La Marque Indep. Sch. Dist.*, 54 F.App'x 412 (5th Cir. 2002) ("A plaintiff raising a constitutional claim against a municipality must identify the policy, connect the policy to the municipal body, and show that the particular injury occurred because of the execution of the policy.").

## IV. *BIVENS*

Plaintiff sues Agent in her official and individual capacities for allegedly tampering with evidence relevant to the federal charges against him. His claims against her arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See, e.g., Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M, 2010 WL 582146, at *2 (N.D. Tex. Feb. 18, 2010) ("Because pro se complaints are liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the claims, not the label or characterization of a pro se plaintiff.") (citation omitted). In *Bivens*, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. *Bivens*, 403 U.S. 388. *Bivens* mirrors but is not "'the substantial equivalent of 42 U.S.C. § 1983.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citation omitted).

### A.    <u>Official Capacity</u>

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *Bivens* only provides a remedy for victims of constitutional violations by government officers in their individual capacities. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). It does not provide for a cause of action against a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agriculture*, 55 F.3d 991, 995 (5th Cir. 1995). This is because the purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Any *Bivens* claim against Agent in her official capacity should be dismissed.

B.    **Individual Capacity**

The United States Supreme Court has reiterated that "*Bivens* was the product of an '*ancien regime*' that freely implied rights of action." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Abbasi*, 137 S.Ct. at 1855) (quoting in turn *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)).    *Bivens* claims are now generally relegated to the only three circumstances in which the Supreme Court allowed a private right of action against federal officers for constitutional violations: (1) "manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment," *see Bivens*, 403 U.S. at 389-90; (2) "discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment," *see Davis v. Passman*, 442 U.S. 228 (1979); and (3) "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment," *see Carlson v. Green*, 446 U.S. 14 (1980).    *Oliva*, 973 F.3d at 442; *see also Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021) (finding that First-Amendment retaliation claim arose in new context and emphasizing that "in recent decades, the Supreme Court has 'consistently refused to extend *Bivens* to *any* new context'") (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (emphasis in original) (citation omitted).

To decide whether *Bivens* allows a cause of action, courts must consider: (1) whether a case involves a "new context" that is distinct from these cases, and (2) whether any "special factors" preclude extending *Bivens* to this "new context." *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019) (citation omitted).    The Supreme Court has recently emphasized that its "understanding of a 'new context' is broad." *Hernandez v. Mesa*, — U.S.—, 140 S.Ct. 735, 743 (2020). Virtually anything other than the circumstances presented in *Bivens*, *Davis*, or *Carlson*  is a "new context" precluding the existence of a *Bivens* remedy if special factors counsel against

extension. *Oliva*, 973 F.3d at 442 (citing *Abbas*i, 137 S.Ct. at 1865). The Supreme Court has also made clear that extending *Bivens* to new contexts is now a "'disfavored' judicial activity." *Abbasi*, 137 S.Ct. at 1857 (citation omitted).

      *1.*    *New Context*

In deciding whether a plaintiff's claim arises in a new context under *Bivens*, the "proper test" is whether the case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S.Ct. at 1859; *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'") (citation omitted). "Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment *in the same way*.'" *Oliva*, 973 F.3d at 442 (quoting *Cantú*, 933 F.3d at 422) (emphasis in original); *see also Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new context. To be sure, '[n]o one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.'") (quoting *Cantú*, 933 F.3d at 422). Although it did not "endeavor[] to create an exhaustive list of differences that are meaningful enough to make a given context a new one," the Supreme Court provided some examples that might be instructive:

> A case might differ in a meaningful way because the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or

emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60.

Here, Plaintiff's evidence-tampering claim arises in a new context under *Bivens*. This is the case even if the right at issue flows from the Fifth Amendment, which was also at play in *Davis*. *See, e.g.*, *Watkins v. Martinez*, No. 20-40781, 2022 WL 278376, at *1 (5th Cir. Jan. 31, 2022) (finding that excessive force claim under Eighth Amendment arose in new context for *Bivens* purposes); *Canada*, 950 F.3d at 307 (affirming that *Davis*, which dealt with a gender discrimination claim under the Fifth Amendment, does not bring the panoply of Fifth Amendment rights into play under *Bivens*).

### 2.    *Special Factors*

"When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether 'special factors' counsel against inferring such a cause of action in the absence of 'affirmative action by Congress' to create one.'" *Dudley v. United States*, Civil Action No. 4:19-cv-317-O, 2020 WL 532338, at *6 (N.D. Tex. Feb. 3, 2020) (quoting *Abbasi*, 137 S.Ct. at 1857). This "inquiry must concentrate on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1857-58. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858. "[I]f there is an alternative remedial structure present in a certain case," the existence of that process "alone may limit the power of the judiciary to infer a new *Bivens* cause of action." *Id.*

11

Here, special factors counsel against extending *Bivens* to Plaintiff's claim. Congress has already legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. "Some 15 years after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997(e)). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* "*Abbasi* makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment but, chose not to do so." *Dudley*, 2020 WL 532228, at *7. Further, the Fifth Circuit recently held that the Federal Tort Claims Act provides an alternate method of relief, which counsels against expanding *Bivens. Watkins*, 2022 WL 278376, at *1 (citing *Cantú*, 933 F.3d at 423; *Abbasi*, 137 S.Ct. at 1858).

Plaintiff's evidence-tampering claims against Agent in her individual capacity under *Bivens*, are not cognizable.[4]

## V. CRIMINAL STATUTES

Finally, Plaintiff claims that Defendants violated a federal criminal statute—18 U.S.C. § 1512, which prohibits tampering with a witness, victim, or informant. (*See* doc. 11 at 7.) Criminal statutes, however, cannot be enforced in a civil action. *Florance v. Buchmeyer*, 500 F.Supp.2d 618, 626 (N.D. Tex. 2007). "Private citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2

---

[4]Plaintiff's *Bivens* claims against Agent are also barred by *Heck* because a finding of evidence tampering would imply the invalidity of his conviction, which has not been overturned, invalidated, or otherwise called into question. *See Cardona v. United States*, 191 F. App'x 327, 328 (5th Cir. 2006) (dismissing a *Bivens* claim against federal prosecutors under *Heck*).

(N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 301 (5th Cir. 2003) (per curiam)); *see also Pham v. Tex. State Bd. of Dental Exam'rs*, No. A-17-CV-1008 RP, 2018 WL 3978371, at *2 n.2 (W.D. Tex. Aug. 17, 2018) (recognizing that there is no private right of action under 18 U.S.C. § 1001 because it is a criminal statute); *Smith v. City of Princeton, Tex.*, No. 4:17-CV-85-ALM-CAN, 2017 WL 9285515, at *3 (E.D. Tex. Oct. 31, 2017) (citing *de Pacheco v. Martinez*, 515 F.Supp.2d 773, 787 (S.D. Tex. 2007) ("18 U.S.C. § 1956 does not create a private cause of action" because it is a criminal statute); *Hussein v. Gates*, 657 F.Supp.2d 77, 81 (D.D.C. 2009) (holding that § 241 is a criminal statute that does not expressly create a private right of action upon which a plaintiff may sue a defendant); *Furman v. Compucom Sys., Inc.*, No. 3:03-CV-1433L, 2004 WL 1672314, at *8 (N.D. Tex. July 23, 2004) (holding that 18 U.S.C. § 4 does not grant a private right of action for a civil litigant to initiate a lawsuit under this statute); *Rockefeller v. U.S. Court of Appeals Office*, 248 F.Supp.2d 17, 23 (D.D.C. 2003) (holding that as a criminal statute, § 242 does not convey a private right of action).

To the extent that Plaintiff is seeking to assert claims under a criminal statute, his claim should be dismissed for failure to state a claim.

## VI. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint."). Because Plaintiff responded to three questionnaires, he has pleaded his best case, and leave to amend is not warranted.

## VII. RECOMMENDATION

Plaintiff's claims should be dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), or, alternatively, with prejudice until the conditions set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), are satisfied. This dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[5]

**SO RECOMMENDED** on this 28th day of March, 2022.



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5]Section1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15